UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60238-CIV-COHN/SELTZER

EDWARD GOLDIN,

    Plaintiff,

vs.

MURPHY'S LAW HOLLYWOOD d/b/a
MURPHY'S LAW IRISH PUB and
MURPHY'S LAW BAR & GRILL,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment [DE 39] and Plaintiff's Motion for Partial Summary Judgment [DE 40]. The Court has considered the Motions, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

As discussed below, Plaintiff's Motion raises the following two arguments: (1) Defendant is vicariously liable for the acts of its employees that injured Plaintiff; and (2) the Defendant's employees acted negligently. Defendant's sole argument in response is that "**no** on-duty Murphy's employees or agents participated in any way in the events about which [Plaintiff] complains." DE 50 at 2 (emphasis in original). The Court finds that the actions of Defendant's employees were within the scope of their employment and thus Defendant is vicariously liable for such actions. Accordingly, Defendant's Motion for Summary Judgment, which also rests solely on the aforementioned argument, will be denied. With respect to the second argument raised in Plaintiff's Motion, the Court concludes that whether the actions of Defendant's employees were negligent is a question for the jury.

## I. MATERIAL FACTS

It is undisputed that on the evening of February 2, 2007 and into the morning of February 3, 2007, Plaintiff was a patron of Murphy's Law Hollywood, LLC d/b/a Murphy's Law Irish Pub and Murphy's Law Bar & Grill ("Murphy's Law"). It is further undisputed that at approximately 3:00 a.m., Plaintiff had a confrontation in Murphy's Law and was escorted out of the bar. Finally, it is undisputed that Plaintiff suffered a broken ankle as a result of being thrown out of the bar.

### 1. Plaintiff's and Nelson Torres' Accounts

At his deposition, Plaintiff testified that the relevant events began as he was standing next to a flight of stairs on the ground floor of Murphy's Law. DE 41-2 at 44-45. According to Plaintiff, two women passed in front of Plaintiff to go up the stairs and the second one grabbed the stair rail and looked like she was going to fall backwards. Id. at 45. Plaintiff "gently" touched the woman between her upper and middle back. Id. at 47. The woman did not acknowledge Plaintiff and continued up the stairs. Id. Plaintiff was then confronted by a man wearing a black shirt and dark jeans. Id. at 48.

The man asked Plaintiff why the Plaintiff was "touching [his] girl." Id. at 49. Plaintiff giggled in response to the question. Id. The man repeated the question and got closer to the Plaintiff. Id. at 51 ("And he got up in my face and said it again."). Plaintiff then put his arms up because the man "was close," at which point the man pushed Plaintiff back onto the floor. Id. Another individual wearing a black shirt and jeans approached and Plaintiff recognized this man as the doorman that checked Plaintiff's identification when he entered Murphy's Law. Id. at 51-52. The two men picked Plaintiff up in the air. Id. at 53 ("They grabbed me by one by each leg and hand,

and you know, I was kind of – my hand's in the air, my feet up in the air."). The men then "walked [Plaintiff] out the side door and tossed [him]." Id. Plaintiff landed on his ankle and "snapped it." Id. Plaintiff went to the hospital where he learned that his ankle was fractured and it would require surgery. Id. at 58.

The night Plaintiff was injured, he went to Murphy's Law with his friend, Nelson Torres. Mr. Torres was deposed in connection with this case. See DE 41-2. Mr. Torres testified that he "was about 15 feet from the staircase" discussed above. Id. at 29. Torres testified that although he did not see it, he assumed the woman fell because he saw Plaintiff help her up and begin talking to her. Id. Thereafter, Torres saw "some guy dressed up as a bounder face-to-face with Plaintiff." Id. "Soon after that, another man came with a black shirt. ... He grabbed [Plaintiff] and both of them took [Plaintiff] outside through the door." Id. Torres testified that it appeared to him that the men were "[t]hrowing Plaintiff out of [the] establishment." Id. at 60. Mr. Torres recalled that both of the men who escorted Plaintiff from the bar had been working the doors at Murphy's Law that night and one of the men was working the front door when Torres and Plaintiff arrived. Id. at 37-38.

Torres pursued the group through the crowd. Id. at 29. Mr. Torres testified that one man was on each side of Plaintiff, who was "vertical" at the time, and Torres could not see if Plaintiff's feet were off the ground. Id. at 39. Torres stated that the "[t]wo men took [Plaintiff] out the door and one man pushed him down and got on top of him." Id. at 52-53. Torres ran to Plaintiff's assistance and pulled the man off Plaintiff. Id. at 42. The man got up and left and Torres never saw him again. Id. at 42-43. Torres stated that Plaintiff "tried to stand up on his own and he couldn't." Id. at 44. Torres

testified that Plaintiff was pushed down by one of the men and that Plaintiff did not trip over the door frame. Id. at 53.

### 2. Rodrigo Penaranda's Account

Rodrigo Penaranda was deposed as a Rule 30(b)(6) witness on behalf of Murphy's Law. Mr. Penaranda was the head doorman at Murphy's Law during the relevant period and he was involved in the hiring and firing of the doormen. DE 41-3 at 26; see also id. at 83. Mr. Penaranda testified that during the night in question, Plaintiff had a confrontation with Raul Vega.[1] Mr. Penaranda did not see the altercation, but rather obtained his knowledge of the events by speaking with Mr. Vega after the incident. Id. at 12. Penaranda stated "[f]or all I know, I don't know what [Vega] told me was the truth or not, I don't know. I wasn't there." Id. at 85.

Mr. Penaranda testified that Mr. Vega was off-duty when he confronted Plaintiff. Id. at 11 ("He was already drinking. He was with his girlfriend. He wasn't working at the time."). Mr. Penaranda's understanding of the incident is as follows:

> [Vega] said that pretty much [Plaintiff] touched his girlfriend's sister in her like private parts and that [Vega] told him three times prior to that to leave her alone and that [Plaintiff] still was trying to touch her and she tried to smack [Plaintiff] or something. [Vega] got in the middle and they started scuffling. Then [Plaintiff] was grabbing [Vega] and [Vega] was grabbing [Plaintiff] at the same time. They went to the exit and [Plaintiff] fell.

Id. at 38. According to Mr. Penaranda, Vega informed him that when he was taking Plaintiff through the exit "the [Plaintiff] tripped on [the door frame] and that's when the [Plaintiff] fell. [Vega] said that he fell on top of the [Plaintiff] and then [Vega] got up." Id. at 73.

---

[1] Although Mr. Penaranda testified that the man's name is Raul Gonzalez, the parties agree that his name is actually Raul Vega.

4

Mr. Penaranda fired Vega the next day because of the incident. Id. at 16. "[Vega] was already cut off from work. Our policy is that nobody is allowed to get into any type of fight or argument or any type of discussion with a customer once they're off, especially if they're drinking." Id. at 16-17. Mr. Penaranda further testified that "[e]ven if [Vega] was working," he did not engage in the proper procedure. Id. at 81. According to Penaranda, "[Vega] would have to call me first and then I would see if [Vega's] right or not to take him out. [Vega] wasn't supposed to make that decision." Id.

Mr. Penaranda also testified that Mr. Vega was the only person from Murphy's Law to have any contact with Plaintiff. Id. at 11. Mr. Penaranda based this testimony on his conversation with Mr. Vega and the fact that "[a]ll the security that was working at that time was with me taking care of [an unrelated] problem" elsewhere in Murphy's Law. Id. In addition, Mr. Penaranda testified that the doormen at Murphy's Law wear black shirts and black pants. Id. at 49-50. The doormen are not provided with uniforms and instead wear their own clothes, but the outfit must be all black. Id.

3. **Defendant's Stipulation that It Will Not Produce an Eyewitness**

On August 5, 2009, Plaintiff filed a Motion for an Order in Response to Defendant's Refusal to Comply with Rule 26(a) Disclosures and this Court's Previous Order [DE 25]. There, Plaintiff argued that Defendant failed to produce the addresses of material witnesses to the action. United States Magistrate Judge Barry Seltzer held a hearing on Plaintiff's Motion. On September, 4, 2009, Judge Seltzer entered an Order [DE 35] which states the following:

> Because Vega's whereabouts [are] unknown and because he is allegedly the only "eyewitness" to the subject incident, at the hearing, Plaintiff made an *ore tenus* motion to exclude any "eyewitness" that might later be identified. In response, Defendant's counsel stipulated that he will not be producing any witness with personal knowledge of the altercation with Plaintiff. The Court accepts that stipulation, but declines to enter an order

5

of preclusion at this time. If Defendant were later to produce such a witness, Plaintiff can then formally move for an order of preclusion.

DE 35 at 4-5.

### 4. Murphy's Law Employee Handbook

Plaintiff attached the Murphy's Law Employee Handbook in support of his Motion. See DE 41-4. Mr. Penaranda authenticated the document. See DE 44-3 at 20-21. The document states that "[s]hould a problem arise in the interior of the pub, the patrons involved are to be escorted to OPPOSITE exits and the Paradise Security is to be informed." DE 41-4 at 1.[2] The Handbook makes clear that the Paradise Security or the Police should not be called without the floormen first informing the manager on duty and allowing the manager to make the decision. Id. It is also the manager's responsibility to determine whether a "customer [is] to be ejected from the premises." Id. However, the Handbook advises the Murphy's Law floormen that a "problem patron in question can be escorted outside until the manager on duty can address the situation." Id.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To

---

[2] "Paradise Security" refers to the Seminole Paradise Security which patrols the Hard Rock Casino Complex.

discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Rule 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587. Further, "the general rule is that inadmissible hearsay 'cannot be considered on a motion for summary judgment.'" Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

Rule 56(e) requires that "affidavits" that support or oppose summary judgment motions "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." "This rule also applies to testimony given on deposition." Macuba, 193 F.3d at 1323 (citation omitted). At a minimum, to be considered on a motion for summary judgment, the information must have the potential to be "reduced to admissible evidence at trial." Pritchard v. Southern Co. Services, 92 F.3d 1130, 1135 (11th Cir. 1996).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby,

7

911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50.

### III. ANALYSIS

**1.     Defendant's Employees Were Acting Within the Scope of Their Employment**

Under Florida law, an employer is not vicariously liable for the wrongful acts of its employee unless the acts occur within the real or apparent scope of the employment relationship. <u>City of Miami v. Simpson</u>, 172 So.2d 435, 437 (Fla. 1965). Conduct is within the scope of employment only if (1) it was of a kind the employee was employed to perform; (2) it occurred within the time and space limitations of the employment; and (3) it was committed at least in part by a purpose to serve the employer's interests. <u>See, e.g.</u>, <u>Sussman v. Florida East Coast Properties, Inc.</u>, 557 So.2d 74, 75-76 (Fla. 3rd DCA 1990) (citations omitted); <u>Morrison Motor Co. v. Manheim Services Corporation</u>, 346 So.2d 102, 104 (Fla. 2d DCA 1977); <u>Carter v. America Online, Inc.</u>, 208 F.Supp.2d 1271, 1278-79 (M.D. Fla. 2001). This framework is utilized by courts to analyze the actions of both on-duty and off-duty employees. <u>See</u> <u>Saudi Arabian Airlines Corp. v. Dunn</u>, 438 So. 2d 116 (Fla. 1st DCA 1983); <u>Liberty Mut. Ins. Co. v. Electronics Systems, Inc.</u>, 813 F. Supp. 802 (S.D. Fla. 1993).

"The convenient test is whether at the time of the incident the employee was doing what his employment contemplated." <u>Benac v. Wal-Mart Stores, Inc.</u>, 2006 WL 1174338, *2 (N.D. Fla. May 2, 2006) (citing <u>Morrison Motor</u>, 346 So.2d at 104). "This question is one of law 'if there is no conflict in the facts.'" <u>Liberty Mut. Ins. Co.</u>, 813 F. Supp. at 805 (quoting <u>Johnson v. Gulf Life Ins. Co.</u>, 429 So. 2d 744, 746 (Fla. 3d DCA 1983)). The circumstances of this case satisfy all three of the elements set forth above.

The deposition testimony of Plaintiff and Nelson Torres represent the only first-hand accounts of the incident that may be reduced to admissible evidence. Further, Defendant has stipulated that it will not produce at trial any eyewitness who can testify regarding the altercation. In addition, Defendant has pointed to no exception to the hearsay rule that would enable Mr. Penaranda's second-hand account of the incident to be admitted into evidence at trial. Accordingly, the evidence before this Court is that Plaintiff was thrown out of the bar by two individuals who were dressed as floormen for Murphy's Law and were seen to be working the doors on the night in question. Based on these facts, the Defendant is liable for any negligent acts taken by its employees while escorting Plaintiff out of the establishment.

Even crediting the inadmissible testimony of Mr. Penaranda that only Mr. Vega, an off-duty employee, was involved in the altercation with Plaintiff, the Defendant is still liable for Vega's actions. First, escorting Plaintiff out of Murphy's Law is conduct of the kind Mr. Vega was hired to perform. Indeed, such action is expressly contemplated in the Murphy's Law Employee Handbook which provides that a "problem patron in question can be escorted outside until the manager on duty can address the situation." DE 41-4 at 1. Mr. Penaranda testified that Mr. Vega was unauthorized to confront Plaintiff because Vega was off-duty. However, "[t]he fact that the conduct involved an unauthorized act, or even an illegal one, does not necessarily take the act outside the scope of employment." Benac, 2006 WL 1174338 at *2 (citing Hennagan v. Department of Highway Safety and Motor Vehicles, 467 So.2d 748, 750-51 (Fla. 1st DCA 1985)). "What is most significant is whether [Vega's] conduct was of the type contemplated by his employment." Benac, 2006 WL 1174338 at *2.

Second, Mr. Vega took this action on the premises of Murphy's Law at a time when the bar was open. Therefore, this consideration also weighs in favor of holding

9

Defendant liable.

Third, Mr. Vega's behavior was, in part, committed for the purpose to serve his employer. Defendant relies on the deposition testimony of Mr. Penaranda to argue that Mr. Vega was a rogue employee who committed an intentional tort against Plaintiff for personal reasons. This argument might be persuasive if Mr. Vega assaulted Plaintiff in the bar. Mr. Vega, however, escorted Plaintiff out of the bar which is conduct "of the same general character as that authorized" by the Murphy's Law Employee Handbook. Benac, 2006 WL 1174338 at *2. Accordingly, the Court finds that Defendant is subject to vicarious liability.

### 2. The Court Cannot Decide as a Matter of Law that the Actions of Defendant's Employees were Negligent

A plaintiff must establish four elements to state a valid negligence claim: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a failure on the part of the defendant to perform that duty; (3) the plaintiff's injury being actually and proximately caused by the breach; and (4) the plaintiff suffering actual harm from the injury. See Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla. 2003); Zivojinovich v. Barner, 525 F.3d 1059, 1067 (11th Cir. 2008). Plaintiff makes the following argument that negligence is established as a matter of law:

> [The] two bouncers took control over the plaintiff. In doing so they undertook a duty of care to ensure that they delivered him outside safely. They breach this duty by throwing him onto the ground. In throwing Mr. Goldin to the ground, the bouncers caused his ankle to snap. Negligence cannot be any more clear-cut.

DE 40 at 16.

The Court concludes that Defendant's employees did have a duty to exercise reasonable care in escorting Plaintiff out of the bar. However, whether the employees breached this duty is a question for the jury. "Whether a defendant has exercised

reasonable care in a particular situation is an issue to be determined by the trier of facts." Travelers Ins. Co. v. Securitylink from Ameritech, Inc., 995 So.2d 1175, 1178 (Fla. 3d DCA 2008) (citing Whitt v. Silverman, 788 So.2d 210, 220 (Fla. 2001); Evans v. S. Holding Corp., 391 So.2d 231, 233-34 (Fla. 3d DCA 1980) (Schwartz, J., dissenting); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, 100-01 (Fla. 3d DCA 1980)). "[T]he determination of whether reasonable care has been exercised in a specific situation is just what juries do and what, under our system, they are for." Whitt, 788 So.2d at 220.

Plaintiff's argument conflates the elements of proximate cause and damages with a breach of a duty of care. In other words, Plaintiff claims that the bouncers necessarily breached a duty of care because the Plaintiff's ankle was broken. Plaintiff cites no case law in support of its argument that the Court should decide the issue of negligence on a motion for summary judgment. Moreover, the Court finds that such a ruling would convert a negligence claim into a strict liability claim that treats the Defendant as an insurer of the Plaintiff. Plaintiff also points to the testimony of Mr. Penaranda that Mr. Vega was fired as a result of his involvement in the incident. See DE 40 at 16. However, Mr. Penaranda cited the facts that Mr. Vega was off-duty and was drinking when he confronted Plaintiff rather than the manner in which Vega escorted Plaintiff out of the bar. Accordingly, the Court will allow the jury to determine whether the evidence establishes a valid negligence claim.

## IV. CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment [DE 40] is **GRANTED in part** and **DENIED in part**.

      a.     Plaintiff's Motion is **GRANTED** with respect to the issue of whether Defendant is vicariously liable for the actions of its employees.

      b.     Plaintiff's Motion is **DENIED** with respect to the issue of whether Defendant's employees were negligent.

2.    Defendant's Motion for Summary Judgment [DE 39] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 10th day of November, 2009.

*[signature]*

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

12